**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**BRIAN M. STARR**                                                                              **PETITIONER**
Reg # 98394-079

**VS.**                    **CASE NO. 2:09CV00062 JMM/BD**

**T.C. OUTLAW, Warden,**
Federal Correctional Complex,
**Forrest City, Arkansas**                                                   **RESPONDENT**

**RECOMMENDED DISPOSITION**

**I.**     **Procedure for Filing Objections**

The following recommended disposition has been sent to United States District Judge James M. Moody. Any party may file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the Recommended Disposition. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

    Clerk, United States District Court
    Eastern District of Arkansas
    600 West Capitol Avenue, Suite A149
    Little Rock, AR 72201-3325

## II. Introduction

Petitioner Brian M. Starr is currently serving a 150-month sentence in the Bureau of Prisons ("BOP") as the result of a felon-in-possession-of-a-firearm conviction. Petitioner was transferred to the BOP after serving approximately 5 ½ years in the Arkansas Department of Correction. In this 28 U.S.C. § 2241 habeas petition (docket entry #2), he contests the BOP's decision to run his federal sentence consecutively to his state sentence. For the following reasons, the District Court should DENY and DISMISS the petition.

## III. Background

Petitioner was arrested on May 3, 2001, for Burglary of Habitation, by the Live Oak County, Texas Sheriff's Department. At the time of his arrest, there were outstanding warrants for Petitioner from Washington County, Arkansas, for parole violations, theft-of-property, robbery, and commercial burglary.

On September 24, 2001, federal authorities took physical custody of Petitioner from Texas state authorities through a writ of habeas corpus *prosequendum*. On October 31, 2001, Petitioner appeared in the United States District Court for the Southern District of Texas and entered a plea of guilty to the offense of felon-in-possession-of-a-firearm. (#8-2 at p. 15) On November 14, 2001, the Texas authorities dismissed Petitioner's burglary-of-habitation charge. At that time, Petitioner was physically in the custody of federal authorities, and no other Texas state charges were pending against him.

On January 10, 2002, authorities in Washington County, Arkansas, lodged a detainer with the United States Marshals Service. On January 28, 2002, the federal district court imposed a sentence of 150-months in the BOP, to be followed by a five-year term of supervised release. The federal court was silent as to whether Petitioner's federal sentence was to run concurrently with any yet-to-be-imposed state sentence. These facts are undisputed, although the events that followed are not as clear.

Respondent states that Petitioner was returned to the primary custody of Texas authorities on February 1, 2002. (#8, p. 3) Respondent implies that Texas authorities subsequently transferred Petitioner to the custody of Arkansas authorities on February 14, 2002.[1] (#8, p. 3) It is unclear how Petitioner could have been returned legally to the primary custody of Texas authorities when there were no Texas state charges pending against Petitioner on February 1, 2002. Respondent (at least tacitly) concedes that Petitioner was in federal custody from November 14, 2001, until he was sentenced on federal charges on January 28, 2002, noting that Petitioner has been given credit on his federal sentence for that time period, *i.e.*, the period of time after all Texas state charges were dismissed until the time Petitioner was sentenced in federal court. Furthermore, Arkansas authorities had lodged a detainer with the United States Marshals Service, not with Texas state authorities.

---

[1] In a later filing, however, Respondent stated that "[o]n February 14, 2002 Petitioner was returned from federal writ to Arkansas state officials." (#26-1, p. 3, ¶12)

3

This Court asked Respondent to provide specific documents and to brief the primary-custody and transfer issues. (#20) Respondent, however, was unable to provide the specifically requested detainers or transfer documents. (#26) Instead, Respondent provided a declaration, general summaries, and data compilations.[2] (#26-1) Surprisingly, and despite receiving additional time as requested, Respondent declined to brief any of the specific custody issues the Court asked him to address. (#26)

On February 14, 2002, either Texas authorities or the United States Marshal transferred Petitioner to Arkansas authorities. On May 24, 2002, Petitioner was sentenced in Arkansas state court to twenty years' imprisonment on new Arkansas state charges. This sentence was concurrent with Petitioner's Arkansas parole revocation term. (#26-1, p. 29) It is undisputed that the Arkansas court ordered Petitioner's twenty-year sentence on the new charges to run concurrently with the federal sentence previously imposed.

Instead of being returned to federal authorities, Petitioner was incarcerated in the Arkansas Department of Correction until December 3, 2007, when he was paroled to a

---

[2] It seems incredible that these summaries and data compilations were not based on preserved documents. In his motion for extension of time to file documents, Respondent stated that he needed additional time because "most of the requested documents have been archived." (#22) It does not appear that any of the documents provided, a docket history printout from CM/ECF, United States Marshal Prisoner Tracking System printouts, Arkansas Department of Correction computerized data compilations, BOP Sentence Monitoring printouts, and a BOP memorandum dated July 21, 2009, were archived. Respondent has certified, however, that he "made an effort to obtain all of the records requested by the Court . . .". (#26, ¶1)

federal detainer. The BOP began to run Petitioner's 150-month federal sentence on this date. He is now serving his 150-month sentence on the federal gun charge and argues that the time he served in the Arkansas Department of Correction should count toward his federal sentence since the state court ordered the twenty-year state sentence to run concurrently with the previously imposed 150-month federal sentence.

## IV.   Discussion

### A.   Petitioner's Sentence

When Petitioner received his federal sentence, the federal court was silent as to its concurrence with any future state sentences. (#26-1, p. 16-23) Less than four months later, when Petitioner entered a negotiated guilty plea to his Arkansas charges, the Arkansas court ordered Petitioner's Arkansas sentence to run concurrently with his already imposed federal sentence. (#2, p. 36) Petitioner confirmed the obvious, that "[i]t was the understanding of [the Arkansas court] that petitioner would first serve the federal sentence and that the State Court's sentence would run concurrently with it." (#2, p. 13) This is apparent from the Arkansas Judgment and Commitment Order and the Arkansas court's recognition of the federal court's "prior jurisdiction" over Petitioner. (#2, p. 13, 33-36)

Unfortunately for Petitioner, the Arkansas court's clear intent is not binding. When there is any conflict between state and federal sentences, the federal sentence controls. *United States v. Mayotte*, 249 F.3d 797, 799 (8th Cir. 2001). Of course, at the

time of sentencing, there was no obvious or apparent conflict between the Arkansas and federal sentences.

Petitioner's situation is not novel. The Second Circuit has noted that "in some circuits, when a defendant is sentenced first in federal court and then on an unrelated offense in state court, neither judge can effect concurrent sentencing even if that is the intention of both." *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 75 (2d Cir. 2005).[3] The executive branch of the federal government prosecutes the case and then determines, through the BOP, whether the sentence will be consecutive to, or concurrent with, a separate state sentence, without necessarily following judicial intent. In this circumstance, serious doubt is cast upon basic principles of separation of powers. This result also conflicts with basic principles of federalism "because the federal BOP is given the effective authority to enforce (or not) a state court's determination that a state sentence should run concurrently." *Abdul-Malik*, 403 F.3d at 76; see also, *Fegans v. United States*, 506 F.3d 1101, 1104 (8th Cir. 2007) ("we agree with the Second Circuit that Congress should examine the issue because it implicates important federalism and separation of powers concerns"); *Gurski v. Outlaw*, Case No. 2:08CV00170 BSM, 2008 WL 5427728 (E.D.Ark. Dec. 30, 2008) ("there are serious issues of comity, federalism,

---

[3] The Fifth Circuit, where Petitioner was sentenced, and the Eighth Circuit, where this Court sits, appear to be two of the "some circuits" alluded to by the Second Circuit.

and separation of powers that need to be addressed, as petitioner is not the first, and is not likely to be the last, in this difficult situation").

Petitioner's case differs in two important aspects from many habeas petitions concerning concurrence of federal and state sentences. In many cases, the federal court was silent, and remains silent, regarding the potential concurrence of the federal and yet-to-be imposed state sentence. The BOP then fills this void under *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990). See also *Fegans*, 506 F.3d at 1104 (BOP determines concurrency through a *nunc pro tunc* designation of the state prison as the place of federal confinement).

In this case, however, Petitioner sent the federal sentencing court a letter on September 3, 2008, requesting that the court order his federal sentence to run concurrent with his Arkansas sentence. *United States v. Starr*, Case No. 2:01CR00288-01, docket entry #80 (S.D. Tex., closed Jan. 30, 2002). Petitioner attached his Arkansas Judgment and Commitment Order to the letter, showing the Arkansas court's intent to run the Arkansas sentence concurrent with the federal sentence. Petitioner noted that the only reason he entered a guilty plea was because his lawyer told him that his sentences would be concurrent. Petitioner's federal sentence was also the result of a guilty plea, and a government motion noting Petitioner's substantial assistance. (#26-1, p. 23)

On September 11, 2008, the federal sentencing court determined that Petitioner's "federal sentence was ordered to run consecutively to his future state sentence or

7

sentences, not concurrently." (#26-1, p. 51)  The court was in no mood for comity, and its decision forecloses this Court from granting most of the relief Petitioner requests.[4]

The second difference with this case from the typical petition is that at the time of the federal sentencing, it appears Petitioner was in the exclusive and primary custody of the United States.  In many cases, federal authorities simply borrow a petitioner from state authorities and return him to face state charges.  Here, there were no state charges pending against Petitioner in Texas, the state that Respondent argues had primary jurisdiction over him.

Regardless of custodial status, the federal sentencing court, sitting in the Fifth Circuit, clearly had the authority to run Petitioner's federal sentence consecutively to his yet-to-be-imposed state sentence.[5]  Even if the sentencing court lacked such authority,

---

[4] Comity is "[c]ourtesy among political entities (as nations, states, or courts of different jurisdictions), involving especially mutual recognition of legislative, executive, and judicial acts."  Black's Law Dictionary, 7th ed. 1999.

[5] While the circuits remain split on this point, the Eleventh, Eighth, Tenth, and Fifth Circuits have held that 18 U.S.C. § 3584 authorizes district courts to order a federal sentence to run consecutively to an undischarged state sentence. *United States v. Ballard*, 6 F.3d 1502, 1507 (11th Cir. 1993); *United States v. Mayotte*, 249 F.3d 797, 799 (8th Cir. 2001); *United States v. Williams*, 46 F.3d 57, 59 (10th Cir. 1995); *United States v. Brown*, 920 F.2d 1212, 1216 (5th Cir. 1991).  Conversely, the Second, Fourth, Sixth, Seventh, and Ninth Circuits have held that a federal district court does not have such discretion or authority.  *United States v. Donoso*, 521 F.3d 144, 147 (2d Cir. 2008); *United States v. Smith*, 472 F.3d 222, 225 (4th Cir. 2006); *United States v. Quintero*, 157 F.3d 1038, 1039-1040 (6th Cir. 1998); *Romandine v. United States*, 206 F.3d 731, 737 (7th Cir. 2000); *United States v. Clayton*, 927 F.2d 491, 492-93 (9th Cir. 1991).

Petitioner cannot challenge the validity of his federal sentence through a habeas petition filed under 28 U.S.C. § 2241.

A challenge to the validity of a federal sentence must be brought in the court where the defendant was sentenced through a 28 U.S.C. § 2255 motion. *Abdullah v. Hedrick*, 392 F.3d 957, 959 (8th Cir. 2004), cert. denied, 125 S.Ct. 2984 (2005). Petitioner cannot use a § 2241 habeas petition to challenge his sentence unless he demonstrates that § 2255 is "inadequate or ineffective." *Abdullah*, 392 F.3d at 959.

Petitioner has not made the required showing in this case. Accordingly, this Court may consider this petition only to the extent it challenges the BOP's execution of Petitioner's sentence. See *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002) ("[a] petitioner may attack the execution of his sentence through § 2241 in the district where he is incarcerated; a challenge to the validity of the sentence itself must be brought under § 2255 in the district of the sentencing court.").

  **B.**     **BOP Sentence Computation**

The Attorney General, through the BOP, has responsibility for computing federal sentences and determining the commencement of sentences under 18 U.S.C. § 3585. *United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006) (citing *United States v. Wilson*, 503 U.S. 329, 334-35, 112 S.Ct. 1351 (1992)). The Court reviews the BOP's decisions for abuse of the agency's "substantial discretion." *Fegans*, 506 F.3d at 1105.

Through the BOP's administrative process, Petitioner requested credit on his federal sentence for the time he spent in the Arkansas Department of Correction. (#8-2, p. 38-43) The BOP construed his request as one for *nunc pro tunc* designation of the Arkansas Department of Correction as the location for service of his federal sentence. (#8-2, p. 40) Consideration of this request is controlled by BOP Program Statement 5160.05. Granting this request would, in practical terms, mean Petitioner's federal sentence commenced when he entered the Arkansas Department of Correction.

The BOP considered Petitioner's offense conduct, criminal history, and "the silence of the sentencing court" in declining to grant *nunc pro tunc* designation.[6] (#8-2, p. 40) There is no indication in the record that the BOP abused its discretion when declining Petitioner's request. In light of the federal sentencing court's determination that the sentences were consecutive, the BOP might have abused its discretion if it had granted Petitioner's request to effectively run his sentences concurrently. Consequently, Petitioner is not entitled to credit on his federal sentence for time served in the Arkansas Department of Correction under his Arkansas sentence. The only remaining questions concern the BOP's commencement of Petitioner's federal sentence and pre-sentence credit determination.

---

[6] As previously noted, the sentencing court broke its silence on September 11, 2008. (#26-1, p. 47-53)

### 1. **Commencement of Petitioner's Federal Sentence**

A federal prison sentence commences on the date the defendant is received into custody awaiting transportation to the official detention center where the sentence will be served. 18 U.S.C. § 3585(a). On January 28, 2002, Petitioner received his 150-month federal sentence and was remanded to the custody of the United States Marshal. (#26-1, p. 16-23). After transfer to Arkansas, conviction in Arkansas Courts, and 5 ½ years in the Arkansas Department of Correction, the BOP commenced Petitioner's federal sentence on December 3, 2007, the date Arkansas authorities paroled Petitioner to a federal detainer. (#8, p. 5)

Respondent has previously taken the position that a sentence commences on the date of imposition when a prisoner is serving no other federal or state sentence, and is in exclusive federal custody. *Huff v. Sanders*, Case No. 2:06CV00002 WRW/BD, docket entry #8, ¶ 11 (E.D.Ark. Dec. 2, 2008) (citing 18 U.S.C. § 3585).[7] This position reflects the BOP's Program Statement 5880.28. Respondent argues in this case, however, that Petitioner was not in the primary custody of federal authorities at the time the federal court imposed Petitioner's 150-month sentence. This Court disagrees.

As the sovereign that first arrested Petitioner, Texas had primary jurisdiction over him. See *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005) ("As between the state

---

[7] Respondent in that case was Linda Sanders, previously the Warden of the FCI-Forrest City. Respondent in this case is T.C. Outlaw, current Warden of the FCI-Forrest City.

11

and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person."). On September 24, 2001, federal authorities took physical custody of Petitioner from Texas state authorities through a writ of habeas corpus *prosequendum*. At this point, federal authorities were "borrowing" Petitioner from the State of Texas.

Texas, however, could elect, under the doctrine of comity, to relinquish primary custody of Petitioner to the United States. *United States v. Dowdle*, 217 F.3d 610, 611 (8th Cir. 2000). On November 14, 2001, that is precisely what Texas did. Prosecutors in Live Oak County, Texas dismissed all Texas charges pending against Petitioner in favor of federal prosecution. This type of "discretionary election is an executive, and not a judicial, function." *Id*. (prosecutor or state representative, rather than state judge, must relinquish the state's jurisdiction for it to be effective). (#8, p. 3)

As of November 14, 2001, Petitioner was physically in the custody of federal authorities, and there were no Texas charges pending against him. Texas effectively relinquished custody and jurisdiction over Petitioner to the United States at that time. Authorities in Arkansas, recognizing the United States custody and jurisdiction, filed a detainer with the United States Marshal.

Respondent maintains that the United States did no more than "borrow" Petitioner, and he lays out a time line of events in support of his position. Respondent's legal

support for his argument, however, is completely absent. This Court specifically requested that Respondent brief this issue:

> In addition to the requested materials, the Court requests additional briefing from the parties. Based on the current record, it appears the State of Texas relinquished primary jurisdiction of Petitioner to the United States when Texas authorities dismissed all of their charges against Petitioner on November 14, 2001. See *Unites States v. Dowdle*, 217 F.3d 610, 611 (8th Cir. 2000) (under the doctrine of comity, a sovereign with primary jurisdiction over an accused may relinquish primary jurisdiction to another sovereign through the actions of a member of the sovereign's executive branch) . . . .
> If the United States held primary jurisdiction over Petitioner prior to his transfer to the State of Arkansas, it is not clear how, or if, the United States relinquished primary jurisdiction to Arkansas . . . .
> The legal ramifications of whether and when the United States gained primary jurisdiction over Petitioner and "loaned" him to either the State of Texas or the State of Arkansas were not addressed by either party. Accordingly, the Court request the parties provide briefs on this issue . . . .

(#20, p. 4-5)

Despite receiving additional time from the Court, Respondent did not brief these questions. (#26) From the records available to this Court, it is clear that the United States had primary and exclusive jurisdiction over Petitioner at the time of imposition of his federal sentence. This fact distinguishes this case from other habeas petitions concerning computation of state and federal sentences. It also affects the commencement of Petitioner's federal sentence under 18 U.S.C. § 3585 and BOP Program Statement 5880.28.

Clearly, when a defendant is borrowed for purposes of prosecution and returned to the state with primary jurisdiction or custody over the defendant, the federal sentence

13

does not immediately commence. *United States v. Hayes*, 535 F.3d 907, 908 (8th Cir. 2008). Texas, however, effectively relinquished any claim it had to Petitioner. Arkansas was in the process of trying to acquire Petitioner, as evidenced by the detainer *filed with the United States Marshal*. Petitioner was serving no other federal or state sentence. Accordingly, the BOP erred by failing to commence Petitioner's sentence on the date of imposition, January 28, 2002.

If Respondent had addressed this issue, he might have argued that Petitioner's parole status prevented the BOP's commencement of Petitioner's federal sentence. Under this logic, however, the BOP would not have commenced Petitioner's federal sentence on December 3, 2007. Instead, Petitioner would still be awaiting the commencement of his federal sentence, while incarcerated in the BOP, but currently serving only the remainder of his twenty-year Arkansas sentence.[8]

Even if the BOP erred by not commencing Petitioner's sentence until December 3, 2007, it does not appear the BOP clearly erred in calculating Petitioner's federal sentence. The federal sentencing court's decision to run the federal sentence consecutively to the yet-to-be-imposed state sentence precludes Petitioner from receiving credit on his federal sentence from May 24, 2002, the date the state sentence was imposed, until December 3, 2007, the date Arkansas paroled Petitioner. The BOP will give Petitioner credit on his

---

[8] On December 3, 2007, the date the BOP commenced Petitioner's sentence, Petitioner had 5285 days remaining on his Arkansas sentence. (#26-1, p. 26)

federal sentence for all the time from May 3, 2001, the date of Petitioner's arrest by Texas authorities, until February 13, 2002, the date of Petitioner's transfer to Arkansas. (#26-1, p. 43)

Would commencement of Petitioner's federal sentence on January 28, 2002, entitle Petitioner to credit on his federal sentence between February 13, 2002, and May 24, 2002? It does not appear so.

When a federal sentence is silent regarding the concurrence of a not-yet-imposed state sentence, the federal sentence will not "be placed into operation until the U.S. Marshals' Service or the Bureau of Prisons gains exclusive custody of the prisoner." BOP Program Statement 5880.28, p. 1-32A (Feb. 14, 1997). The federal sentencing court initially was silent regarding the concurrence of the federal and state sentences. While it appears Petitioner was in the exclusive custody of the United States, BOP policy still requires return of a prisoner to state authorities to complete an undischarged or even non-existent state sentence, regardless of whether the undischarged or non-existent sentences are concurrent or consecutive. BOP Program Statement 5880.28, p. 1-32A-1-33 (Feb. 14, 1997). BOP Program Statements, while not controlling, are entitled to some deference. *Reno v. Koray*, 515 U.S. 50, 61, 115 S.Ct. 2021, 2027 (1995) (citations omitted).

In this case, records indicate that Petitioner's parole-violator term began to run on February 14, 2002, the date he was returned to Arkansas. If the BOP had commenced Petitioner's sentence on January 28, 2002, BOP policy would still have required

Petitioner to return to Arkansas. Petitioner's parole-violator term would have run consecutively with his federal sentence. Consequently, Petitioner would not have received any additional credit toward his federal sentence.

It appears the BOP acted reasonably in filling the void left by Congress in the administration of Petitioner's state and federal sentences. Because the BOP has not abused its discretion or acted contrary to law, this Court cannot find material error in the BOP's commencement of Petitioner's sentence on December 3, 2007, instead of January 28, 2002.

### 2. Pre-Sentence Detention Credit

A federal prisoner is entitled to prior custody credit for any time spent in official detention prior to the date the sentence commences, so long as the time was not credited to another sentence. 18 U.S.C. § 3585(b). The Attorney General, through the BOP, has the authority to award credit under section 3585(b). *United States v. Wilson*, 503 U.S. 329, 333-36, 112 S.Ct. 1351 (1992).

The BOP has awarded Petitioner pre-sentence detention credit for time spent in custody from May 3, 2001, the date of Petitioner's arrest by Texas authorities, until February 13, 2002, the date of Petitioner's transfer to Arkansas. (#26-1, p. 43) Due to his consecutive sentences, Petitioner is not entitled to credit for time spent serving his state sentence from May 24, 2002, until December 3, 2007. The only question that remains is

whether the BOP properly denied Petitioner credit for custodial time between February 14, 2002, and May 23, 2004.

Arkansas Department of Correction records show that Petitioner's state parole-violator term began on February 14, 2002, the date he was returned to Arkansas. (#26-1, p. 25-33) Petitioner, at the very least, received state credit toward the parole violator term as evidenced by his "dead time" ending on February 14, 2002. (#26-1, p. 30) With limited exceptions, 18 U.S.C. § 3585 does not allow double crediting. See *Wilson*, 503 U.S. at 337 (section 3585(b) makes it clear that a prisoner cannot receive double credit for detention time). Because the federal and state sentences were consecutive, Petitioner is not entitled to an exception for time credited to his state sentence under *Kayfez* or *Willis*. See *Kayfez v. Gasele*, 993 F.2d 1288 (7th Cir. 2003) (post-conviction Petitioner serving concurrent state and federal sentences was entitled to credit against his federal sentence for all of his pre-sentence incarceration, even though time had already been credited against state sentence; since Petitioner's sentences were concurrent, crediting only against state sentence would not reduce his period of actual imprisonment); *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971). Accordingly, the BOP properly denied Petitioner credit for his time in custody between February 14, 2002, and May 23, 2004.

V. **Conclusion**

Petitioner's challenge to Respondent's computation of his federal sentence is legally without merit. This Court recognizes the need for Congress to address the current

administration of federal and state sentences. While this Court may agree with Petitioner's arguments, under current law, it cannot grant the relief Petitioner seeks.

Accordingly, the Court recommends that the District Court dismiss Brian M. Starr's petition for writ of habeas corpus with prejudice.

IT IS SO ORDERED this 13th day of December, 2010.

_____
UNITED STATES MAGISTRATE JUDGE